**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

AIR CANADA INC.,
     Petitioner,

     v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,
     Respondent.

**Civil Action No. 24-2249 (JDB)**

---

**MEMORANDUM OPINION**

Air Canada has petitioned this Court to confirm and enforce its arbitral award against the Bolivarian Republic of Venezuela ("Venezuela").  Venezuela seeks dismissal of the petition, contending that the award is unenforceable pursuant to Article V of the New York Convention because the Maduro regime represented it in its arbitration with Air Canada, to the exclusion of Venezuela's 2015 National Assembly.

The Court denies Venezuela's motion to dismiss and grants Air Canada's petition to confirm the arbitral award.  The New York Convention requires confirmation and enforcement of foreign arbitral awards absent a meritorious Article V defense, and no such defense applies here. Article V(2)(b)'s public policy exception does not preclude enforcement of the award because the D.C. Circuit has determined that enforcement will not abridge the recognition power of the President of the United States.  Article V(1)(a) does not supply Venezuela with a defense to enforcement because it was competent to enter into an arbitration agreement with Air Canada. Article V(1)(c) does not bar enforcement because the parties agreed to resolve arbitrability disputes in arbitration, and this Court must give considerable deference to the tribunal's determination of

1

the representation issue.    Finally, Venezuela's invocation of Article V(1)(b)'s due process protections fails because the 2015 National Assembly had an opportunity to be heard in a meaningful way during the arbitral proceedings.

## BACKGROUND

The underlying dispute arose from Air Canada's operation of a flight between Caracas and Toronto.    Mot. to Dismiss [ECF No. 11-1] at 3.    In April 2013, shortly after the Maduro regime came to power, Air Canada began experiencing difficulty converting the Venezuelan currency it accrued from ticket sales into U.S. dollars—a process requiring authorization from the Comisión de Administración de Divisas ("CADIVI"), a Venezuelan government entity.    Id.    In response, Air Canada suspended its Caracas-Toronto flights, and on December 16, 2016, filed a request to arbitrate its dispute with Venezuela over those funds before the International Centre for Settlement of Investment Disputes ("ICSID").    Id.

For over two years, the Maduro regime represented Venezuela in the arbitration, see id. at 3-4, which took place in Paris, France, and was conducted in accordance with the ICSID Additional Facility Rules, Mem. in Opp'n [ECF No. 13] at 5.    But trouble was brewing back in Venezuela. In May of 2018, the country held highly controversial elections.    See Venezuela US SRL v. Bolivarian Republic of Venezuela, 789 F. Supp. 3d 1, 5 (D.D.C. 2025), aff'd, 178 F.4th 679 (D.C. Cir. 2026).    While Maduro claimed victory and retained control of the state, on January 23, 2019, the legislature rejected the validity of the election results, and declared its president, Juan Guaidó, Interim President of Venezuela.    See id.    That same day, the United States withdrew recognition of Maduro's government and recognized the 2015 National Assembly as the legitimate government of Venezuela.    See Statement Announcing United States Recognition of National

2

Assembly President Juan Gerardo Guaidó Márquez as Interim President of Venezuela, 2019 Daily Comp. Pres. Docs. 201900046 (Jan. 23, 2019).

Two months later, in late March, a representative of the 2015 National Assembly sent a letter to ICSID asserting that Maduro no longer held the office of President of Venezuela and that no one acting on behalf of the Maduro regime possessed "the authority to exercise the judicial representation of Venezuela in arbitral proceedings." March 27 Letter [ECF No. 11-2] at 2-3. At the time, there were only two steps remaining in the arbitral proceedings—Venezuela's filing of its rejoinder and a final hearing on jurisdiction and the merits. Mem. in Opp'n at 5.

Nevertheless, one week later, the tribunal ordered counsel for Air Canada, counsel for the Maduro regime, and counsel for the 2015 National Assembly to file two rounds of written submissions addressing Venezuela's representation. Award [ECF No. 1-2] ¶ 79. After counsel for all three filed both rounds of submissions, id. ¶¶ 85, 87, the 2015 National Assembly wrote ICSID for a second time, contending that "any award resulting from a proceeding in which any other person is recognized as representing the Republic will lack any validity." April 29 Letter [ECF No. 11-3] at 2-3.

After considering the parties' submissions, the tribunal issued a procedural order regarding Venezuela's representation. Procedural Order No. 7 [ECF No. 13-2]. The tribunal stated that, while it could "not decide on the legitimacy of a regime or government" because such a determination constituted "a political and constitutional question . . . beyond the authority and jurisdiction of this Tribunal," it was authorized to "decide on whether or not the proceedings c[ould] continue with Respondent's representative on record." Id. ¶¶ 64-65. The tribunal ultimately determined that Venezuela's original representatives could and would proceed to preserve the arbitration's integrity and protect the interests of the parties. Id. ¶¶ 67, 70.

3

The following year, the tribunal held the arbitration's final hearing. <u>See</u> Award ¶ 111. The Maduro regime represented Venezuela and the 2015 National Assembly did not participate. Mot. to Dismiss at 5. Following the hearing, the tribunal unanimously found that Venezuela had breached its obligation to guarantee Air Canada transfer of its funds, and it ordered Venezuela to pay Air Canada more than $25 million in compensation and legal fees. <u>See</u> Award at 193.

Air Canada filed the instant petition seeking an order confirming and enforcing the final arbitral award pursuant to the New York Convention.[1] Pet. to Confirm Arb. Award [ECF No. 1]. Venezuela moved to dismiss the petition but asserted only Article V affirmative defenses. <u>See</u> Mot. to Dismiss at 7, 17. Air Canada has opposed Venezuela's motion, and Venezuela has replied. Mem. in Opp'n; Reply [ECF No. 14]. The petition and motion are thus ripe for resolution.

## **LEGAL STANDARD**

Under the Foreign Sovereign Immunities Act ("FSIA"), "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993) (citing <u>Verlinden B.V. v. Cent. Bank of Nigeria</u>, 461 U.S. 480, 488-89 (1983)). One of these specified exceptions abrogates foreign sovereign immunity in certain actions "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." <u>See</u> 28 U.S.C. § 1605(a)(6). "[T]he New York Convention is exactly [such a] treaty . . . ." <u>Venezuela US SRL</u>, 789 F. Supp.

---

[1] Because Venezuela is not an ICSID member, 22 U.S.C. § 1650a—which codifies the United States' obligations under the ICSID Convention—does not apply. <u>See</u> Int'l Centre for Settlement of Inv. Disputes, Database of ICSID Member States, https://icsid.worldbank.org/about/member-states/database-of-member-states [https://perma.cc/WJV2-QJQ8] (last visited July 8, 2026). Instead, "[s]ince the Award was made in France and enforcement is sought in the United States, both of which are signatories to the New York Convention, the confirmation is governed by the [New York] Convention." <u>Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela</u>, 146 F. Supp. 3d 112, 119 (D.D.C. 2015).

3d at 7 (quotation omitted); see also Convention on the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10, 1958, 21 U.S.T. 2517 ("New York Convention").

The United States ratified the New York Convention by amendment of the Federal Arbitration Act ("FAA"). See 9 U.S.C. §§ 201-08. Under the FAA, a court "shall confirm the [arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." Id. § 207. Put another way, "the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards" because of the "emphatic federal policy in favor of arbitral dispute resolution." Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 727 (D.C. Cir. 2012) (second quotation quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)). A district court may refuse to enforce an award "only on the grounds explicitly set forth in Article V of the [New York] Convention." TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 935 (D.C. Cir. 2012) (quotation omitted).

Article V contains several affirmative defenses to enforcement,[2] including a public policy defense and defenses grounded in the parties' contractual and due process rights. Because there is "a strong presumption in favor of enforcing an arbitration award," Sharp Corp. v. Hisense USA Corp., 292 F. Supp. 3d 157, 174 (D.D.C. 2017), the burden of establishing one of these defenses is "heavy" and rests with the party resisting confirmation, Gold Rsrv., 146 F. Supp. 3d at 120.

## DISCUSSION

Air Canada seeks enforcement of its arbitral award pursuant to the FAA and the New York Convention. Venezuela does not object to this Court's jurisdiction or the legal sufficiency of Air

---

[2] The defenses set out in the New York Convention are merits defenses to enforcement, rather than jurisdictional defenses to federal court review. See Deutsche Telekom, A.G. v. Republic of India, 155 F.4th 694, 697-98 (D.C. Cir. 2025).

5

Canada's petition.  Instead, Venezuela raises several Article V affirmative merits defenses.  See Mot. to Dismiss at 7, 17.  After pointing out this procedural mismatch, Air Canada requested that the Court construe Venezuela's motion to dismiss as an opposition to its petition, Mem. in Opp'n at 1 n.2, and Venezuela did not oppose Air Canada's request in its reply.  Because the Court agrees that Venezuela's motion does not assert grounds to dismiss the petition, and Venezuela has not objected to Air Canada's request, the Court will grant the request and construe Venezuela's motion as its opposition to the petition.

Turning to the merits, Venezuela asserts several defenses under Article V of the New York Convention, including that confirming the award would violate United States public policy, New York Convention, art. V(2)(b), Venezuela was incapacitated, id. art. V(1)(a), the tribunal lacked jurisdiction to decide who could represent Venezuela, id. art. V(1)(c), and Venezuela was unable to present its case, id. art. V(1)(b).

This Court will not refuse enforcement of the award under the New York Convention's public policy exception, as enforcement does not constitute a denial of the President's recognition power.  Nor does this Court find that Article V(1)'s protections regarding incapacitation, the arbitral tribunal's jurisdiction, and the ability of a party to present its case supply grounds for refusal.  Venezuela presented its arguments regarding representation to the tribunal and had an opportunity to be heard on the merits.  The tribunal determined it had the authority to resolve the representation issue, and this Court will not reject its conclusion.

Because none of Venezuela's Article V defenses are meritorious, the Court will deny its motion to dismiss and grant Air Canada's petition.

### I.    Article V(2)(b)

The New York Convention provides that "[r]ecognition and enforcement of an arbitral award may [ ] be refused" if it "would be contrary to the public policy of that country."  New York Convention, art. V(2)(b).  To invoke this exception, a party must both "identify a well-defined public policy" that confirmation of the award would violate and show that the violation would "clearly" undermine "the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property."  Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria, 844 F.3d 281, 287, 289 (D.C. Cir. 2016) (citation modified).  This defense is "construed narrowly."  Id. at 289.  To apply, the "[r]ecognition or enforcement of the award must be repugnant to the fundamental notions of what is decent and just in the United States and must violate this nation's most basic notions of morality and justice."  Venezuela US SRL, 178 F.4th at 682-83 (citation modified).

Venezuela contends that "[e]nforcement of the Final Award would flatly contradict the U.S. Executive's recognition of the 2015 National Assembly as the only legitimate government of Venezuela."  Mot. to Dismiss at 14.  It further argues that this Court, by confirming the award, would indirectly give effect to the Maduro regime, in violation of the United States' express public policy of denying the regime recognition.  See id. at 15.

But the D.C. Circuit has rejected Venezuela's public policy defense on nearly identical facts.  In Venezuela US SRL, Venezuela invoked the New York Convention's public policy exception, arguing that confirmation and enforcement of a damages award "would infringe on the President's exclusive recognition power."  178 F.4th at 683.  The D.C. Circuit disagreed.  It held that "[r]ecognition and enforcement of the damages award against Venezuela does not undermine the President's authority" because confirmation of the award "is not a 'formal acknowledgment'

or 'express declaration' that the Maduro Regime was the 'effective government' of Venezuela." Id. at 683-84 (citation modified).

The same logic controls here.  Confirming Air Canada's award does not imply a denial of the President's recognition of the Guaidó government, cannot be seen as an attempt by this Court to expand its power at the expense of another branch, and does not force the President to contradict his statements regarding the recognition of the Guaidó regime.  Id. at 684.  The public policy exception thus does not permit this Court to refuse to recognize and enforce the arbitral award. See United States v. Torres, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges . . . are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule it.").[3]

Venezuela further contends that enforcement of the award would contradict "the policy decision to keep Venezuelan assets in the United States and out of the control of the Maduro regime" and "[t]he Executive Branch's clear intent" that "the Maduro regime should see no benefit from remaining assets of Venezuela."  Mot. to Dismiss at 16, 17.  However, the beneficiary of this award is Air Canada, not the Maduro regime.

Finally, in its reply, Venezuela contends that "the public policies of fairness and due process require that an arbitral award should not be enforced where the defendant was represented by unauthorized legal counsel."  Reply at 3 (citing Doraleh Container Terminal SA v. Republic of Djibouti, 109 F.4th 608, 613 (D.C. Cir. 2024)).  It is a "basic precept that arguments generally are forfeited if raised for the first time in reply" or if a party was "obscure on the issue in their opening brief and only warmed to the issue in their reply brief."  Twin Rivers Paper Co. v. SEC, 934 F.3d

---

[3] Venezuela attempts to distinguish Venezuela US SRL by asserting in its reply that the public policy concern here is "the breach of allowing the arbitration to proceed with the Republic unrepresented by counsel of its selection and ignoring the Republic's legislative direction that [the Maduro Regime] is not authorized to represent the Republic."  Reply at 5.  These distinct policy arguments are addressed next.

607, 615 (D.C. Cir. 2019) (citation modified).  In its opening brief, Venezuela contended that the Maduro regime lacked authority to represent Venezuela, violating basic principles of fairness and due process.  Mot. to Dismiss at 17, 20.  But Venezuela raised this argument only in the context of its defenses under Article V(1)(a), (b), and (c), not the V(2)(b) public policy exception. Accordingly, the Court finds that it likely forfeited this argument.  And to the extent that Venezuela's new public policy contention is preserved, it is nevertheless unavailing.

At the outset, Venezuela's contention faces an uphill battle because the D.C. Circuit has cast substantial doubt on whether a foreign nation's representation is a colorable public policy ground for denying confirmation of a foreign arbitral award.  See Venezuela US SRL, 178 F.4th at 684 (stating that "[t]he proverbial man on the street, if asked whether" a United States public policy "bears on a foreign nation's representation in an international arbitration" would "mutter 'surely not,' and walk away").  The Court is especially suspect of such public policy in light of the opposing "federal policy in favor of arbitral dispute resolution" and the "strong presumption in favor of enforcement."  Mitsubishi Motors, 473 U.S. at 631.[4]  In addition, while the parties in Venezuela US SRL did not allege an American public policy against unauthorized representation, the D.C. Circuit implied that similar policy arguments sounding in due process can only be raised under Article V(1)(b), not the public policy exception.  178 F.4th at 685-86.

The facts and circumstances of this dispute further compound Venezuela's difficulty, because even if the United States were to have a public policy prescribing a foreign arbitration defendant's due process rights, the tribunal's decision could not have violated that policy. Venezuela is a sovereign nation which, like corporations and other legal entities, cannot speak for

---

[4] Venezuela's reliance on Doraleh to establish such a public policy is misplaced.  In Doraleh, the D.C. Circuit held that the district court had an independent obligation to determine whether the law firm was authorized to represent the party in the district court, not the arbitration.  See 109 F.4th at 613-14.  By contrast, there is no question here whether Venezuela's current counsel is authorized to represent it in this Court.

itself.  It cannot tell the tribunal, nor this Court, who its lawyer is.  It cannot proceed pro se, either. To participate in an arbitration, it must have counsel.  Yet two groups, both purporting to be Venezuela, could not agree on who that counsel was.

When corporations deadlock in an analogous manner, the court may appoint a representative to resolve the impasse.  See William M. Fletcher, et al., Fletcher Cyclopedia of the Law of Private Corporations § 8043 (explaining that many jurisdictions "authorize the appointment of a provisional director or a custodian to operate [a] corporation" in the event of "management deadlock").  Alternatively, courts may dissolve the corporation.  See id. § 8066.10 ("Most jurisdictions now permit judicial dissolution when . . . the directors are deadlocked in the management of the corporate affairs.").  But neither solution was possible here because Venezuela is a sovereign.  The tribunal thus faced a stark choice: allow Venezuela to be represented by counsel that either the 2015 National Assembly or the Maduro regime objected to, or terminate the arbitration altogether.

It cannot be the case that American public policy requires legal and arbitral proceedings to halt indefinitely every time an objector purports to be the true representative of a sovereign state and the tribunal lacks jurisdiction to settle the objection.  Such an extreme construction of due process favoring the sovereign defendant would swallow not only the procedural, but also the substantive rights of plaintiffs.  Fundamental notions of due process must afford defendants more modest protection.  And those protections, whatever their outer bounds, were respected in this case when the tribunal heard from both groups purporting to represent Venezuela and issued a reasoned procedural order before ultimately moving forward with Venezuela's counsel of the past two years.

As a result, Venezuela's public policy defenses fail to provide a basis to deny confirmation of Air Canada's arbitral award.[5]

## II.    Article V(1)(a)

The New York Convention also permits a court to refuse enforcement of an arbitral award if "[t]he parties to the agreement referred to in article II were . . . under some incapacity." New York Convention, art. V(1)(a) (emphasis added). The agreement referenced in Article II is "an agreement in writing under which the parties undertake to submit to arbitration all or any differences." Id. art. II. As a result, "a challenge brought under Article V(1)(a) must be brought against the agreement to arbitrate." BCB Holdings Ltd. v. Gov't of Belize, 110 F. Supp. 3d 233, 248 (D.D.C. 2015), aff'd, 650 F. App'x 17 (D.C. Cir. 2016).

Venezuela does not dispute its capacity to enter into the original arbitration agreement with Air Canada, nor could it. Venezuela argues instead that Maduro's counsel, acting as an "unauthorized" representative, was "generally ineffectual for any purpose" in the later arbitration. Mot. to Dismiss at 20. But because this argument does not implicate the formation of the arbitration agreement, Article V(1)(a)'s protections offer no grounds to deny recognition and enforcement of Air Canada's award.

## III.    Article V(1)(c)

Article V(1)(c) of the New York Convention does not provide this Court with an avenue to refuse confirmation of Air Canada's award either. Under that provision, a court may refuse recognition and enforcement of an award if it "contains decisions on matters beyond the scope of

---

[5] In its reply, Venezuela also contends that confirmation of the award would violate the U.S. public policy embodied in the act of state doctrine. Reply at 4. But the FAA provides that arbitral awards "shall not be refused on the basis of the Act of State doctrine." 9 U.S.C. § 15. This limitation applies to confirmation proceedings under the New York Convention. Id. § 208; see also Zhongshan Fucheng Indus. Inv. Co. v. Fed. Republic of Nigeria, 112 F.4th 1054, 1074 (D.C. Cir. 2024). The act of state doctrine thus does not provide a basis for refusal.

the submission to arbitration."  New York Convention, art. V(1)(c).  Courts apply this provision narrowly, giving "considerable leeway to the arbitrator."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).  Where parties have "'clearly and unmistakably' agreed to arbitrate arbitrability" a court may not "second-guess[] the arbitrator's construction of the parties' agreement."  Gold Rsrv., 146 F. Supp. 3d at 121 (quoting Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA), 508 F.2d 969, 977 (2d Cir. 1974)).

Venezuela does not assert that the merits of its contract dispute with Air Canada were not arbitrable.  Instead, it contends that the panel lacked jurisdiction to decide a second order question—the identity of Venezuela's authorized representative.  In Venezuela's telling, by continuing the proceeding with the Republic's counsel of record, the tribunal decided exactly the sort of "political and constitutional" issue that it acknowledged it could not address, thereby abusing its authority and jurisdiction.  Mot. to Dismiss at 26.

Venezuela's contention overstates the breadth of the tribunal's holding.  True, the tribunal recognized that it could not decide on "the legitimacy of a regime or government," calling that a "political and constitutional question."  Procedural Order No. 7 ¶ 64.  But what the tribunal ultimately determined was that recognition of the 2015 Assembly as the government of Venezuela by the United States and other countries did not preclude it from continuing to arbitrate the dispute with counsel of record.  Id. ¶¶ 65, 70.  Nothing more, nothing less.

The tribunal's determination that it could proceed fell within "the scope of the [parties'] submission to arbitration."  New York Convention, art. V(1)(c).  In their contract, Venezuela and Air Canada agreed that they would arbitrate certain disputes, and that those arbitrations would be governed by ICSID Additional Facility Rules.  Agreement [ECF No. 1-5] at 9.[6]  Article 45(1) of

---

[6] Article XII(4)(b) of the Agreement between the Government of Canada and the Government of the Republic of Venezuela for the Promotion and Protection of Investments, dated July 1, 1996, states that where "either the

those rules states that the tribunal "shall have the power to rule on its [own] competence." Additional Facility Rules [ECF No. 1-4] at 63. In other words, "by incorporating the ICSID Additional Facility Arbitration Rules into their arbitration agreement . . . the parties agreed that the Tribunal would decide any issues of arbitrability." Gold Rsrv., 146 F. Supp. 3d at 121 (citation modified).

Whether an arbitration can proceed is, at its core, a question of arbitrability. What is more, neither Air Canada nor Venezuela deny that they submitted this question to the tribunal. See Award at 14-15. The tribunal considered the submissions of Air Canada, the Maduro regime, and the 2015 National Assembly before entering a procedural order determining that the tribunal both had "the authority to decide on whether or not the proceedings can continue" and that the proceedings could continue. Procedural Order No. 7 ¶¶ 16-24, 65-71.

This Court owes that procedural order "substantial deference," as the tribunal's "own findings concerning its scope to act." Gold Rsrv., 146 F. Supp 3d at 122. Put plainly, Venezuela's argument that the tribunal could not determine whether the arbitration could proceed because proceeding implicated sensitive political questions was raised and rejected. So to adopt it here would impermissibly second guess the tribunal's interpretation of the parties' agreement. Id. at 124; see also Schneider v. Kingdom of Thailand, 688 F.3d 68, 74 (2d Cir. 2012) (holding that when a party agrees to arbitrate issues of arbitrability it is "not entitled to an independent judicial redetermination of that same question"). The Court declines to do so.[7]

---

disputing Contracting Party or the Contracting Party of the investor, but not both, is a party to the ICSID Convention," the dispute may be submitted to arbitration under the ICSID Additional Facility Rules. Agreement at 9. Canada is a party to the ICSID Convention; Venezuela is not. See Int'l Centre for Settlement of Inv. Disputes, Database of Member States, https://icsid.worldbank.org/about/member-states/database-of-member-states [https://perma.cc/WJV2-QJQ8] (last visited July 8, 2026).

[7] Venezuela further contends that this Court should deny the award the "full faith and credit" ordinarily afforded to ICSID awards because the tribunal's decision to proceed with the Republic's representatives on record constituted an abuse of authority. Reply at 6-9 (citing Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, 87 F.4th 510, 519-20 (D.C. Cir 2023)). But here, the award is governed by the New York Convention, not the ICSID

13

This is not to say, however, that a party in Venezuela's position may not object to the merits of an arbitral tribunal's representation determination as a violation of its procedural rights. The protection of due process rights, which "reflects a fundamental value in our American constitutional system," Boddie v. Connecticut, 401 U.S. 371, 374 (1971), is central to the integrity of all courts. Consequently, while contracting parties may assign questions of arbitrability to an arbitrator, related due process claims generally remain cognizable in award confirmation actions. The New York Convention reflects this principle by supplying a narrow exception to the recognition and enforcement of arbitral awards—including those rendered by an arbitral tribunal acting within its authority—where a party was deprived of the ability to present its case. New York Convention, art. V(1)(b). The Court now turns to Venezuela's claim under this provision.

## IV.    Article V(1)(b)

The New York Convention permits a court to refuse enforcement of an arbitral award if "[t]he party against whom the award is invoked was . . . unable to present his case." Id. To be able to present its case, a party must receive an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 146 (2d Cir. 1992) (incorporating the due process standard from Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). Courts generally assess Article V(1)(b) claims "under standards of American law, which require an arbitrator to provide a fundamentally fair hearing, defined as one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." Gold Rsrv., 146 F. Supp. 3d at 127-28 (citation modified).

The requirements for a successful Article V(1)(b) defense are stringent. See id. at 129. In addition to showing that it was denied the opportunity to present its case, the party asserting the

---

Convention. And the New York Convention does not afford "full faith and credit," but rather applies the "substantial deference" standard described above.

14

defense must also point to "additional information or evidence that [it] would have presented at the arbitration had it had the opportunity to do so." Id. at 129 (quoting Rive v. Briggs of Cancun, Inc., 82 F. App'x 359, 364 (5th Cir. 2003)). Put another way, "the party seeking vacatur must establish that (1) the arbitrator committed some error, and (2) the error made a difference." Metro. Mun. of Lima v. Rutas De Lima S.A.C., 141 F.4th 209, 221 (D.C. Cir. 2025) (citation modified).

Under Article V(1)(b), Venezuela asserts that it was unable to present its case because the arbitration proceeded with no notice to the 2015 National Assembly and no opportunity to be heard. Mot. to Dismiss at 24. It further contends that denying the Republic the counsel of its selection and instead allowing an attorney it did not authorize to represent it denied the Republic a fundamentally fair hearing. See id. at 18-19. The Court disagrees for three reasons. First, Venezuela had the opportunity to present its arguments to the tribunal. Second, it was represented by counsel throughout the entirety of the arbitral proceeding, even if that counsel was not the counsel of its choice. And lastly, the tribunal's decision to move forward with Venezuela's counsel of record was not arbitrary.

While the Maduro regime, not the 2015 National Assembly, represented Venezuela in its final arbitration hearing, the Assembly did have notice of the proceedings and a meaningful opportunity to be heard in them. The 2015 National Assembly sent the tribunal two letters regarding Venezuela's representation in the dispute, leaving no doubt that the Assembly knew the proceedings were taking place. Award ¶¶ 74, 80; cf. First State Ins. Co. v. Banco de Seguros Del Estado, 254 F.3d 354, 357 (1st Cir. 2001) (finding actual notice, via an intermediary, may satisfy the requirements of Article V(1)(b)). The tribunal also ordered two rounds of written submissions on the representation question—and the 2015 National Assembly submitted briefs in both rounds. Award ¶ 79.

Only after providing the 2015 National Assembly with an opportunity to present its case on the question of Venezuela's representation did the tribunal decide it could proceed with the parties' representatives on record. Procedural Order No. 7 at 12-13; contra Iran Aircraft, 980 F.2d at 146 (finding a denial of the respondent's opportunity to present its case when the tribunal barred the respondent from submitting evidence and then rejected the respondent's claim for lack of proof). Venezuela therefore had an opportunity to be heard regarding the question of representation.

The Court is also unpersuaded that the tribunal's representation determination prejudiced Venezuela by denying it an opportunity to make other potentially meritorious contentions. Venezuela asserts that its 2015 National Assembly would have defended the arbitration by pointing to corruption in the CADIVI, and asserting that only the Maduro regime, not the state, was liable for Air Canada's injuries. Reply at 9-10. Yet this claim is bound up in an assessment of whether the counsel on record could provide adequate representation to Venezuela. The 2015 Assembly thus had an opportunity to press this issue when it submitted its briefs regarding the question of representation. See Procedural Order No. 7 ¶¶ 68-70 (determining Venezuela's counsel of record could proceed, in part, because counsel was "willing to cooperate and defend Venezuela's interests in th[e] case throughout the end"). "The fact that the [t]ribunal chose not to implement Venezuela's preferred [outcome] . . . does not itself constitute a due-process violation." Gold Rsrv., 146 F. Supp. 3d at 131.

Second, the nature of Venezuela's representation did not deny it a fundamentally fair hearing. Venezuela was afforded the assistance of counsel throughout the entire arbitration. True, Venezuela may not have had its counsel of choice for a portion of the proceedings, because agreeing to Venezuela's counsel of choice would have required the tribunal to identify Venezuela's

16

rightful leader, a question beyond the jurisdiction of the tribunal. But the right to choice of counsel is not absolute.

Even in American courts, a civil litigant's right to chosen counsel can be overridden by a compelling and countervailing interest. See Zaid v. Exec. Off. of President, 815 F. Supp. 3d 113, 132 (D.D.C. 2025) ("A litigant's right to counsel in civil cases includes the right to the counsel of their choice . . . [but] that right is not absolute and can be overridden when compelling reasons exist."). And a court's refusal to hear a civil litigant through his hired counsel is only a denial of a hearing if that refusal is arbitrary. See Powell v. Alabama, 287 U.S. 45, 69 (1932); Lewis v. Lane, 816 F.2d 1165, 1169 n.7 (7th Cir. 1987) (reviewing the district court's denial of a litigant's motion for substitution of counsel for abuse of discretion).

It is undisputed that foreign arbitral tribunals confer less protection—Article V of the New York Convention requires only "a fundamentally fair hearing" with "the minimal requirements of fairness." Gold Rsrv., 146 F. Supp. 3d at 127 (emphasis added); see also Generica Ltd. v. Pharm. Basics, Inc., 125 F.3d 1123, 1130 (7th Cir. 1997) ("[P]arties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena.").

The tribunal's rejection of the 2015 National Assembly's choice of counsel did not abridge these minimal requirements of fairness because the rejection was not arbitrary. In its procedural order denying the 2015 National Assembly's motion to intervene, the tribunal explained that by continuing with Venezuela's counsel of record it avoided the harm of further delay to the proceedings and conferred the benefits of consistency and integrity. Procedural Order No. 7 ¶¶ 67-68. The tribunal also found that continuing with the Maduro regime's representation would not prejudice Venezuela because granting the Assembly's motion to intervene was not required to

17

guarantee that Venezuela's interests were protected.  Id.  The tribunal thus found that compelling and countervailing interests outweighed the Assembly's desire to select Venezuela's representative.  While Venezuela may disagree with the tribunal's conclusions, this Court cannot say that its decision was arbitrary.

In short, Venezuela lacks a viable Article V(1)(b) defense because it received a fundamentally fair hearing.  It was notified of the arbitral proceeding and benefited from the assistance of counsel throughout.  When the 2015 National Assembly raised the issue of Venezuela's rightful representation, the tribunal provided the Assembly an opportunity to present its case.  And the arbitral tribunal supplied a reasoned explanation for its decision to proceed with Venezuela's counsel of record.  Article V(1)(b) of the New York Convention did not require more.

## CONCLUSION

Under the FAA, this Court must confirm and enforce a foreign arbitral award unless it finds grounds for refusal specified in the New York Convention.  9 U.S.C § 207.  Because none of Venezuela's affirmative defenses under Article V of the Convention are meritorious, the Court will deny Venezuela's motion to dismiss and grant Air Canada's petition to confirm its arbitral award.  A separate order will accompany this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Date: August 14, 2026

18